UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MARY LOU HILOW, and
REGIS HILOW,

                      Plaintiffs

v.                                            6:14-cv-288


ROME CITY SCHOOL DISTRICT;
ROME TEACHERS ASSOCIATION;
NEW YORK STATE UNITED
TEACHERS; FERRARA, FIORENZA,
LARRISON, BARRETT & REITZ, P.C.;
KAREN DECROW; ROBERT JULIAN;
JAMES R. SANDNER; and ROME SENTINEL
NEWSPAPER COMPANY,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States District Judge

## <u>DECISION and ORDER</u>

       Plaintiffs Mary Lou Hilow and Regis Hilow commenced the instant action

pursuant to the provisions in the Racketeer Influenced and Corrupt Organizations Act

providing for a civil right of action, 18 U.S.C. § 1964(c), as well as other causes of

action.  Plaintiffs allege that Defendants have engaged in a 25-year conspiracy to

deprive Plaintiff Mary Lou Hilow of a tenured teaching position in the Rome City School

District and prevent her from enjoying the salary and retirement benefits connected to

such position.  Presently before the Court are the motions to dismiss the Complaint of

Defendants Rome Sentinel Newspaper Company, dkt. # 10, Robert Julian, dkt. # 13,

New York State United Teachers, Rome Teachers Association, and James R. Sander,

dkt. # 14, and Karen DeCrow, dkt. # 17.  Also before the Court are the motions for

summary judgment of Defendants Ferrara, Fiorenza, Larrison Barrett & Reitz, PC, dkt. # 34, and Rome City School District, dkt. # 55.

## I.    FACTS[1]

Plaintiffs' Complaint alleges that Plaintiff Mary Lou Hilow was a full-time business teacher at Rome Free Academy from 1964-1969, 1978-1983 and 1986-1989. (Complaint ("Complt."), dkt. # 1 at ¶1).  Mary Lou Hilow received tenure in business education in 1967 and again in 1980.  (Id. at ¶ 2).  She was awarded permanent certification to teach business education in New York State in 1974.  (Id. at ¶ 3).  In 1989, she earned additional tenure as a technology teacher.  (Id. at ¶ 6).  Plaintiff became a member of the Rome Teachers' Association ("RTA") and the New York State Union of Teachers ("NYSUT") in 1978 and has remained a member to this day, first as a permanent teacher, then as a per diem substitute, and finally as a retired teacher. (Id. at ¶ 4).  Hilow paid appropriate dues for each position.  (Id.)

Plaintiff Mary Hou Hilow alleges that Defendants knew that she had an "impeccable" work record from the beginning of her career.  (Id. at ¶ 5).  The records documenting her teaching career, dating to the 1960s, demonstrate her skills, credentials and record.  (Id. at ¶ 7).  Plaintiff was also a member of a "protected age class."  (Id.).  Nevertheless, Plaintiff contends, Defendants "formed an Enterprise in which members . . . conspired and engaged in numerous predicate acts to terminate Plaintiff's tenured teaching position three times and engage in a 31-year RICO pattern

---

[1]For reasons that will become apparent over the course of this opinion, the Court will relate the facts as alleged in the Complaint, even though two of the Defendants have filed motions for summary judgment.  The Court will address the facts detailed in Defendants' summary judgment motions after dealing with the motions to dismiss.

of overt discrimination, vicious retaliation, blacklisting, repeated fraud upon the court in a series of backroom legal proceedings, obstruction of justice, concealment and unprecedented pervasive cover-up." (Id.). The aim of this conspiracy was "to shatter and destroy Plaintiff's teaching career, her livelihood, her physical and mental well-being, her American Dream, her civil rights and the promise of equal justice for all[.]" (Id.).

Plaintiff Mary Lou Hilow[2] lays out a series of allegations concerning her employment that extend as far back as 1970. In March of that year, she contends, she took a maternity leave. (Id. at ¶ 8). While on leave, Helen Arthur, "vice-principal [sic]" of the RFA, called Plaitniff and told her that she would have to resign and withdraw her retirement if she was unable to return to teaching by the following September. (Id.) The district needed to hire a "permanent" teacher. (Id.). This call led Plaintiff–while pregnant with her second child–to resign in a letter dated March 8, 1970. (Id. at ¶ 9). Following Arthur's direction, Plaitniff withdrew her retirement funds. (Id. at ¶ 10). Other female RFA teachers received similar directions in the 1960s and 1970s, including former English teacher Mary Ellison Smith. (Id. at ¶ 11).

Mary Lou Hilow applied for a position in business in the Rome District that was advertised in 1977. (Id. at ¶ 12). She was denied the position, even though she had five years seniority, from 1964 to 1969, and "impeccable" records as a substitute teacher and home tutor from 1964 to 1977. (Id.). Instead, a younger teacher who had

---

[2]Unless identified otherwise, "Plaintiff" shall refer to Mary Lou Hilow. It is apparent that the allegations in the Complaint refer to the experiences of Mary Lou Hilow.

been a substitute in the district for one year, Laurene Allen Zarnock, was hired at a lower salary.  (Id.).

In 1978, Plaintiff Mary Lou Hilow called the Rome Free Academy Principal, Richard Valeri, and volunteered to serve as yearbook advisor.  (Id. at ¶ 13).  A teaching position was created for Plaintiff.  (Id.).  Plaintiff was hired as a business teacher and yearbook advisor to both the editorial and business staffs.  (Id.).  She had a full schedule with "ample student enrollment."  (Id.).  Plaintiff lacked a planning period, in violation of the union contract, however.  (Id.).  RTA officials were aware of these violations, but took no action and made no complaints.  (Id.).

Plaintiff, despite her tenure and certification to teach business, was "wrongfully terminated from 1983 to 1986."  (Id. at ¶ 14).  Plaintiff alleges that "[t]he trumped-up reason given was a continuing decline in enrollments[.]"  (Id.).  She contends that this reason was false, and not "bone fide" grounds to terminate a tenured teacher with "impeccable records."  (Id.).  During three periods while Plaintiff was terminated, 1983-1986, 13 days in 1988, and from 1989 to 1996, three younger male teachers taught business at RFA, even though they lacked certfications to teach business.  (Id. at ¶ 15).  Jerome Tidd, Frank Martinez and Paul Adey received these positions.  (Id.).  Martinez and Adey were eventually transferred to the social studies department, which allowed them to keep their jobs.  (Id.).  Tidd retired after 28 years with the Rome District.  (Id.).  Plaintiff alleges that she was older than 40 at the time of each of these three terminations.  (Id. at ¶ 23).

Plaintiff returned to work for the District in 1986, replacing Bob Haunfelner, a business teacher who had passed away.  (Id. at ¶ 16).  In March 1988, Plaintiff and

seven other teachers received termination notices.  (Id. at ¶ 17).  Plaintiffs contend that

the stated reason for this termination, declining enrollments at the secondary level, was

"trumped-up[.]"  In any case, a declining enrollment was not a "bona fide reason" for

such terminations.  (Id.).  Plaintiffs allege that the terminations were "in clear violation of

tenure/due process laws" and were reversed within eight days "by dumbfounded

members of Rome Board of Education."  (Id.).  Tidd, Martinez and Adey were not part

of this fired group of teachers.  (Id. at ¶ 18).  They were male and younger.  (Id.).

Plaintiff alleges that her enrollments were not the reason for her terminations.

(Id. at ¶ 19).  In the 1988-1989 school year, for instance, she had 116 enrolled in the

first semester and 113 in the second.  (Id.).  These enrollments were higher than those

of three male technology teachers added together.  (Id. at ¶ 22).  These teachers did

not lose their jobs because of low enrollments.  (Id.).  Indeed, her enrollments in that

school year were "far higher than sixteen other male technology teachers[.]" (Id. at ¶

21).  None of these teachers lost their jobs.  (Id.).  Three received notices of

termination, but all three were recalled in September 1989.  (Id.).  In all, 67 teachers

were hired or recalled that year, all of them had "far less seniority than Plaintiff," who did

not get her job back.  (Id.).  In the end, Plaintiff ended up without a full-time position and

without benefits, earning far less than the nine male teachers who did the same job.

(Id. at ¶ 54).  These teachers enjoyed continued employment in the Rome School

District while Plaintiff suffered only discrimination, termination and retaliation.  (Id. at ¶

55).

Plaintiff participated in an arbitration hearing regarding her termination on

December 14, 1989.  (Id. at ¶ 24).  She describes this hearing as "staged," "a sham,"

and "a 'dog and pony show[.]'" (Id.). The arbitration did not address wrongful termination or discrimination issues. (Id.). Plaintiff alleges that she was denied legal representation by NYSUT and the RTA. (Id.). Instead, she hired and paid an attorney, Elizabeth Gibbons, to represent her. (Id.). After Gibbons called Plaintiff to tell her that she had found a law that would advance Plaintiff's case, Gibbons was fired by her law firm. (Id.). Plaintiff contends that Rocco Deperno, a representative of the law firm, had called the NYSUT field representative, Doug Flynn, and that the two conspired to deny plaintiff a fair union representation. (Id.). The union refused to pay Plaintiff's attorney's fees, both for Gibbons' representation and in a lawsuit she filed in 1991. (Id.). Union officials would not support Plaintiff's case. Because the RTA and NYSUT refused to file a petition regarding her 1989 termination, Plaintiff herself filed a petition with Thomas Sobol, then-Commissioner of Education, in 1990. (Id. at ¶ 25).

Plaintiff filed a lawsuit alleging discrimination against the Rome City School District in 1991. (Id. at ¶ 26). The case was dismissed on summary judgment. (Id.). Plaintiff alleges that this dismissal was a result of the "deliberate bungling, attempted extortion, unprecedented legal malpractice [and] carefully-planned sabotage" of her attorney, Defendant Karen DeCrow. (Id.). The case got no publicity. (Id.).

Plaintiff herself filed a brief arguing against summary judgment to the presiding Judge, United States District Judge Neal P. McCurn. (Id. at ¶ 27). Before Judge McCurn made his ruling, Plaintiff informed him that she had discharged DeCrow because she had come to realize that DeCrow was "betraying her and sabotaging her lawsuit[.]" (Id. at ¶ 29). In essence, Plaintiff alleges, she had no legal representation. (Id.). Judge McCurn "returned" this legal memorandum to Plaintiff and, "ignoring

numerous material facts which should have been litigated in a court of law" and the fact that Plaintiff was not represented, issued a summary judgment opinion that Plaintiffs allege was "invalid." (Id. at ¶ 30). Judge McCurn then allegedly "ignored" "numerous letters with exhibits" that Plaintiff sent him over a period of years attempting to revive the case. (Id. at ¶ 31).

Plaintiff filed a complaint against Judge McCurn with the United States Court of Appeals for the Second Circuit in January 2001. (Id. at ¶ 32). The Court of appeals dismissed that complaint, making no mention to the public. (Id.). On August 24, 2001, Judge McCurn returned all of Plaintiff's letters and issued a "gag order" to Plaintiff, informing the Rome School District as well. (Id. at ¶ 33). Plaintiff contends that such actions constituted "facilitating and condoning fraud upon the court, transparent injustice in shocking violation of the Code of Judicial Conduct, obstruction of justice, rules of evidence and crime reporting statutes." (Id.).

Plaintiff then sent a number of detailed letters and e-mails to members of the Judiciary Committee,[3] United States Supreme Court Justices and Supreme Court counsel, and the Judicial Conference of the United States. (Id. at ¶ 34). She in particular sent letters to Justice Ruth Bader Ginsburg, who oversees the Second Circuit. (Id.). Plaintiff sought to initiate impeachment proceedings against Judge McCurn, but was allegedly "ignored and disregarded." (Id.). Plaintiff asserts that these officials failed to "respond to Plaintiff's earnest good-faith pleas and holistically refused to get involved in a case of fraud upon the court[.]" (Id.). Plaintiff's repeated attempts

_____

[3]Presumably of the United States Senate.

to send complaints and exhibits regarding her lawyers' and the lawyers for the defendants' alleged fraud upon the court to the New York State Attorney Grievance Committees and The Lawyers Fund for Client Protection were likewise allegedly ignored. (Id.). Only Defendant Karen DeCrow received a letter of caution in her file. (Id. at ¶ 36). Plaintiff likewise filed complaints about her next attorney, Defendant Robert Julian for alleged fraud upon the court and malpractice, but those complaints were dismissed without an investigation. (Id.). Plaintiff also alleges that the New York State Attorney Grievance Committees in Syracuse and Albany refused to file complaints against the attorneys "secretly hired and paid by Rome District behind closed doors," as well as the NYSUT attorneys who allegedly also engaged in fraud against the Plaintiff. (Id. at ¶ 37).

In April, 2008, Plaintiff filed an unfair labor practice claim against the Rome School District, RTA and NYSUT with the Public Employees Relations Board ("PERB") and with John J. Sweeney, President of the AFL-CIO. (Id. at ¶ 38). Despite a detailed brief that alleged "a continuing RICO pattern of lawlessness and numerous ongoing predicate acts of corruption by Defendants[,]" Plaintiff's complaint was dismissed. (Id. at ¶¶ 39-40). Plaintiff alleges that Sweeney and PERB administrators covered up "an ongoing pattern of union discrimination, misrepresentation and a RICO pattern of institutional corruption." (Id. at ¶ 40).

This alleged refusal of public authorities to take action when confronted with Plaintiff's allegations of corruption and discrimination, Plaintiff asserts, has been ongoing since 1989 through various officials. (Id. at ¶¶ 41-46). Among those who ignored Plaintiff's complaints were members of the Rome Board of Education, the New

York Division of Human Rights, the Equal Employment Opportunity Commission ("EEOC"), law enforcement officials, and government officials in New York and Washington, D.C. (Id. at ¶¶ 41-44). Plaintiff also alleges that state and federal judges ignored her repeated requests to intercede and assist her; some judges placed blocks on e-mails from Plaintiff, and one even threatened legal action against her. (Id. at ¶ 58). After Plaintiff filed numerous complaints with the Commission on Judicial Conduct, this body too blocked her e-mails. (Id. at ¶¶ 59, 61).

Complaints with New York State Attorney Grievance Committees led to similar results. (Id. at ¶ 61). "[D]aily emails" sent to New York County District Attorney Cyrus Vance, officials at the New York Prosecutors Training Institute, and the New York State Task Force on White Collar Crime from January 11, 2013 to March 16, 2013 lead to no action. (Id. at ¶ 62). A complaint filed on April 26, 2013 against several members of the Task Force was summarily dismissed on December 16, 2013. (Id. at ¶ 63). Plaintiff's FBI complaint did not lead to any investigation, though an official purporting to be from the FBI visited her home on November 1, 2012 about "hundreds" of emails allegedly sent by Plaintiff to the FBI in 2012; the official allegedly informed Plaintiff that her e-mails contained a "veiled threat." (Id. at ¶ 65).

Officials have also refused since 1989 to comply with Plaintiff's requests for public information concerning the discrimination she allegedly suffered. (Id. at ¶ 60). This "cover-up" allegedly continued beginning in 2006, when attorneys specializing in the Freedom of Information Act refused to provide Plaintiff with a written opinion on these alleged violations of her rights. (Id. at ¶ 47). Newspaper reporters and members of the press have also refused, Plaintiff contends, to publicize the discrimination she

has suffered.  (Id. at ¶¶ 48, 57).

In the end, Plaintiff alleges, she has been subjected to a 25-year journey "through the underbelly of the justice system," discovering "a pervasive prevailing ignorance, the lack of a public forum and the lack of competent advocacy in civil rights issues throughout all three branches of government, throughout watchdog organizations, throughout women's rights advocates, throughout the legal community, throughout administrative agencies, throughout law enforcement offices, throughout the media, throughout organized labor, and throughout the public."  (Id. at ¶ 53).

Plaintiffs filed a Complaint in this action on March 17, 2014.  See dkt. # 1.  The Complaint alleges a 31-year pattern of lawlessness by the Defendants, who conspired to deny her a position and then retaliated against her for complaining about their actions.  Plaintiffs contend that these actions violated Mary Lou Hilow's constitutional rights to equal protection and due process.  Such actions, Plaintiffs contend, also constitute "an ongoing pattern of deliberate invidious discrimination, retaliation and blacklisting with the deliberate intention to harm Plaintiffs and their family and to continue an official policy of racketeering to deny Plaintiff her tenured teaching position, her livelihood, all rights and benefits including insurance for herself and her husband and her fair retirement pension with benefits, rights and insurance[.]"  (Id. at ¶ 121). This enterprise also worked to defame Plaintiff, labeling her a "troublemaker, a loose canon and a disgruntled employee."  (Id. at ¶ 156).  Plaintiffs also allege a cover-up by officials who control records of her teaching career and others teaching in the Rome District.   The Complaint alleges that her unions failed to provide her with fair representation and instead sided with the district in a labor dispute.  (Id. at ¶ 143).

Named as Defendants are the Rome City School District, the RTA, NYSUT, the law firm of Ferrara, Fiorenza, Larrison, Barett & Reitz, PC, Attorney Karen DeCrow, Attorney Robert Julian, James R. Sander, a former NYSUT attorney, and the Rome Sentinel Newspaper Company.

Defendants Rome Sentinel Newspaper Company, Robert Julian, RTA, NYSUT, and Karen DeCrow all filed motions to dismiss the Complaint. See dkt. ##s 10, 13, 14, and 17. Plaintiffs filed a response. See dkt. # 24. Defendants Ferrara, Fiorenza, Barett & Reitz, PC, and Rome City School District filed motions for summary judgment. See dkts. ## 34, 55. Despite being given an extension of time to file a response to Defendants' summary judgment motions, Plaintiffs have not filed any response. See dkt. # 57. The deadline for filing such a response has long since passed.

## II.    ANALYSIS–MOTIONS TO DISMISS

Several of the Defendants have filed motions to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiffs has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570

(2007)).

Each of the Defendants offer several grounds for granting their motion to dismiss. The Court will address each Defendants' motion in turn.

### 1.   Motion of Rome Sentinel Company

Defendant Rome Sentinel Company, identified in the Complaint as Rome Sentinel Newspaper Company, seeks dismissal of the Complaint on various grounds. Defendant reads Plaintiffs' Complaint, which does not lay out separate causes of action but instead narrates conduct described as contrary to the law, to raise claims under three sources: (1) the Racketeer Influenced and Corrupt Organizations ("RICO") statute; (2) discrimination by the newspaper in writing articles about employment discrimination but not including Mary Lou Hilow's experience; and (3) common law fraudulent conspiracy and aiding and abetting. Plaintiffs do not appear to dispute that they raise those claims, though they contend that other statues apply for other Defendants.

### i.  Duty to Publish

First, Defendant argues as a general matter that the gravamen of Plaintiffs' Complaint against the company is an allegation that the newspaper refused to publish details about Plaintiff Mary Lou Hilow's employment and litigation history with the Defendant School District, and that this failure to publish somehow violated Plaintiffs' rights. Defendants argue that First Amendment law prohibits a Court from compelling a publisher to disseminate particular information, and that the relief that Plaintiffs seek–an "admonishment" against censorship against the newspaper for failing to publish details

12

of the case and an order compelling publication in the future–is unavailable in this forum.  Plaintiffs respond that failing to report their allegations violates crime reporting and obstruction of justice statutes, that the newspaper has become part of a criminal conspiracy by concealing accounts of lawlessness, and that the press has a responsibility to the public to report lawlessness.

The Court will grant the motion on this basis.  Plaintiffs seek to predicate liability for the newspaper defendant on the newspaper's failure to publish stories that Plaintiffs find important.  Plaintiffs' Complaint mentions the Defendant Newspaper in paragraph 26, which alleges that the Rome Daily Sentinel publicized allegations of sexual harassment against a principal in 1999, but did not mention her 1991 lawsuit against the School District.  (Complt. at ¶ 26).  Likewise, the newspaper published information on a "notice of claim" filed by another teacher in 2013, but "repeatedly refused for over 17 years to publicize Plaintiffs' story."  (Id. at ¶ 48).  Plaintiffs also allege that Plaintiff, presumably Mary Lou Hilow, "continually wrote numerous members of the media including Daily Sentinel President/Publisher Stephen B. Water in October 2004" to inform them about "flaws in the legal system."  (Id. at ¶ 57).  These correspondents "disregarded and ignored" her letters.  (Id.).  This failure to publish, Plaintiffs contend, was part of a pattern of "concealment and coverup," a "refus[al] to expose transparent injustice" and the "urgent need for common sense reform" in the justice system.  (Id.).  In the end, Plaintiffs allege, "[i]n refusing to tell Plaintiff's story to the public, members of the media including controlling officers and reports of Rome Daily Sentinel who were continually contacted by the Plaintiff have conspired to engage in concealment and cover-up."  (Id. at ¶ 156).  In short, Plaintiff's complaint against the Defendant

Newspaper Company is that the Company refused to print stories about Plaintiff Mary Lou Hilow's treatment and the corruption she alleges pervades the New York education and justice systems, despite her entreaties.

Such allegations do not amount to any violation of Plaintiff's rights that could be compensated in this Court. The Supreme Court has found that a Court's order to a newspaper to include particular content violates the First Amendment because "[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials–whether fair or unfair–constitute the exercise of editorial control and judgment." Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241, 258 (1974). The Second Circuit cited to this principle in addressing a First Amendment and RICO claim brought by a teacher who "went to the reception area at one of [the] A[ssociated] P[ress]'s offices . . . to deliver information about an alleged racketeering and conspiracy scheme" involving "the New York City Board of Education, the United Federation of Teachers, and the New York City Corporation Counsel." Newman v. AP, No. 96-7176, 1996 U.S. App. LEXIS 27141 at *2 (2d Cir. Oct. 15, 1996). The AP refused to publish her information and Plaintiff sued, alleging a First Amendment violation. Id. at *3. In affirming dismissal, the Court found that "[t]he First Amendment does not guarantee publication of personal views upon demand." Id. Plaintiffs therefore cannot make out a claim based on the newspaper's decision not to publish information about Mary Lou Hilow's case. See, e.g., Person v. New York Post Corp., 427 F.Supp. 1297, 1301 (E.D.N.Y. 1977) (holding that "[a] court may no more tell a privately owned newspaper what not to print than what to print."). Since all of Plaintiffs' claims against the moving defendant

14

are predicated on failing to print articles in the newspaper, those claims must be dismissed.

The statutes cited by the Plaintiffs are of no avail. Plaintiffs contend that Defendant's refusal to print their allegations constitutes misprison of a felony in violation of 18 U.S.C. § 4,[4] accessory after the fact in violation of 18 U.S.C. § 3,[5] aiding and abetting in violation of 18 U.S.C. § 2[6], and obstructing justice by tampering with a witness, victim or informant in violation of 18 U.S.C. § 1512.[7] None of those statutes contain a private right of action. Courts are clear that "'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action.'" Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) (quoting Cannon v. University of Chicago, 441 U.S. 688, 689 (1979)). Congress must

---

[4]That statute provides that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make know the same to some judge or other person in civil or military authority under the United States," is subject to fine or imprisonment. 18 U.S.C. § 4.

[5] That statute provides, in relevant part, that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts, or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3.

[6] That statute provides that "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2.

[7] That statute establishes criminal penalties for obstructing justice by tampering with a witness, victim or informant by killing or attempting to kill a witness, using force or intimidation to prevent testimony or destroy evidence, or attempting to disrupt communication to law enforcement about criminal activity. 18 U.S.C. § 1512.

provide that right, "either expressly or by implication." Id. at 575. The statutes here are simple criminal statutes; they do not expressly or by implication deputize anyone to enforce those statutes. Plaintiffs are incorrect to argue otherwise. The Plaintiffs' claims against Defendant Rome Sentinel Newspaper Company will be dismissed with prejudice, as Plaintiffs could not plead any set of facts which would make the Defendant liable. Though this finding is sufficient to dismiss the case with respect to the Newspaper Company, the Court will address the remainder of the Company's motion. The principles elicited with respect to that motion inform the Court's decision on the motions brought by the remaining parties in the case.

### ii.    Statute of Limitations

The Defendant newspaper contends that all of the Plaintiffs' claims are barred by the statute of limitations. Most of the claims that Plaintiffs make, Defendant argues, occurred well outside the statute of limitations and cannot be the subject of any relief. Moreover, Defendant contends, no violations that occurred within the statute of limitations period should be the subject of a claim, since Plaintiffs were well aware of the offending conduct and did not act for years. Plaintiffs respond by citing to irrelevant legislation and arguing that they are victims of a continuing violation.

Each of the three types of claims explained above has a different statute of limitations. "RICO claims are subject to a four-year statute of limitations." Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012). Such a claim accrues upon the discovery of the injury alone." Id. at 150. In other words, "'RICO's four-year statute of limitations 'begins to run when the plaintiff discovers–or should reasonably have discovered–the alleged injury.'" Id. at 148 (quoting McLaughlin v. Am. Tobacco Co., 522

16

F.3d 215, 233 (2d Cir. 2008)).   The statute of limitations for a Section 1983 claim brought in New York is three years.  Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).  In that setting, "the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm."  Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994).  Plaintiff brings state-law claims as well.  In New York, "a fraud-based action must be commenced within six years of the fraud or within two years from the time the plaintiff discovered the fraud or 'could with reasonable diligence have discovered it.'"  Sargiss v. Magarelli, 12 NY3d 527, 532, 909 N.E.2d 573, 576, 881 N.Y.S.2d 651, 654 (2009).  "The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was 'possessed with knowledge of facts from which [the fraud] could be reasonably inferred.'"  Id. (quoting Erbe v. Lincoln Rochester Trust Co., 3 NY2d 321, 326, 144 N.E.2d 78, 165 NYS2d 107 (1957)).  As a general rule, "'knowledge of the fraudulent act is required and mere suspicion will not constitute a sufficient substitute.'"  Id.

As explained above, Plaintiffs' Complaint points to several discrete instances where the Defendant Newspaper Company refused to print information about Plaintiff Mary Lou Hilow's case, even though the Defendant covered other instances of alleged wrongdoing in the Defendant School District during the period in question.  Plaintiffs point to events in 1999, 2003 and 2013.  They also allege an ongoing pattern of discrimination as part of a larger conspiracy against them.

Any claims based on the first two discrete events alleged in the Complaint are barred by the statute of limitations, whatever type of claim Plaintiffs attempt to bring.

17

The claim related to the 2013 incident does not really reference events that occurred in 2013. Plaintiffs allege that the newspaper published a story on another matter in 2013, and that this publication underlined the fact that the newspaper had spent the previous 17 years refusing to publish any stories about Plaintiffs' situation. Plaintiff does not explicitly allege here that she requested that a story be published. Thus, Plaintiffs have not alleged any discrete and particular conduct by the Defendant within the limitations period, and have instead pointed to particular events occurring well outside that period. Plaintiffs have not alleged a claim based on any conduct by the Defendant that caused injury within the limitations period.

Plaintiffs argue that their claims are timely, however, because Defendant's conduct is part of a larger pattern of discrimination. Such an argument could be construed as one alleging a "continuing violations" theory. In a Section 1983 claim, "[w]hen a plaintiff experiences a 'continuous practice and policy of discrimination' . . . 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)). If a plaintiff demonstrates a continuing violation, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." Id.[8] In New York, "[t]he continuing-wrong or continuing-violation

_____

[8]The continuing violations doctrine does not apply under RICO; instead "RICO actions are subject to a rule of separate accrual[,]" meaning that "each time a plaintiff discovers or should have discovered an injury caused by the defendant's violation" of the statute, "a new cause of action arises as to that injury, regardless of when the actual violation occurred." Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988). Plaintiffs could not point to any new injury they discovered from Defendants'

doctrine tolls the limitations period to the date of the commission of the last wrongful act when there is a series of continuing wrongs." Doukas v. Ballard, 39 Misc.3d 1227(A), at *12 (Suffolk Cty. Sup. Ct., May 1, 2013). The doctrine must "be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." Id. at *13. The continuing violations doctrine cannot apply to this case, whether under federal or state law. As explained above, the last actual discrete act by the Defendant occurred far earlier than the statute of limitations that applies to all of the actions. At best, Plaintiffs' continuing complaints of discrimination concern a continuing injury from discrimination that occurred years ago. As to this particular Defendant, no allegations of actual acts discrete acts by the Defendant have occurred within the limitations period. The continuing violations doctrine cannot save Plaintiffs' claims.

Neither can any equitable doctrine, such as equitable tolling. Courts "apply the equitable tolling doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights[.]'" Pear 296 F.3d at 85 (quoting Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985)). The doctrine permits tolling of the statute of limitations "where a plaintiff 'can show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action." Id. (emphasis in original). Here, Plaintiffs' Complaint alleges a years-long pattern of unfairness and discrimination, and nothing in the Complaint indicates that anything kept Plaintiffs unaware of their causes of action. Indeed, the Complaint alleges that officials have ignored Plaintiffs' concerns for years. The problem is not that

conduct. All of the injuries they allege stem form Mary Lou Hilow's 1989 loss of her teaching position.

Plaintiffs were unaware of their causes of action until recently–indeed, they have already filed one federal complaint about these matters–but that no one has listened to them.  As such, the statute of limitations also bars Plaintiffs' claims.

### iii.    RICO Claim

Defendant next argues that, even if the claim were not time-barred, Plaintiffs could not prevail on their RICO cause of action.  The RICO statute prohibits persons engaged in interstate commerce from engaging in certain "racketeering" activities.  18 U.S.C. § 1962.  The statute also prohibits a conspiracy to violate these provisions outlawing racketeering.  18 U.S.C. § 1962(c).  RICO establishes that a "person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court" and mandates a recovery of treble damages.  18 U.S.C. § 1964(c).   A person seeking to recover on the civil liability provisions of the RICO statue "must show: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation."  Hecht v. Commerce Clearing House, Inc, 897 F.2d 21, 24 (2d Cir. 1990).  "In the RICO context," a plaintiff alleging fraud or mistake as a basis for the racketeering claims "must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b)[.]" D. Penguin Bros. v. City Nat'l Bank, 2014 U.S. App. LEXIS 19909, at **6 587 Fed. Appx. 663, 666 (2d Cir. 2014).  If the racketeering activity consists of other types of conduct "such as non-fraud predicate acts or . . . the existence of an 'enterprise'" the Complaint need only satisfy the general pleading requirements of Rule 8(a)."  Id.; see FED. R. CIV. P. 8(a)(2) (requiring that the Complaint contain "a short and plain statement of the cliam showing that the pleader is entitled to relief[.]").

The Plaintiff's Complaint does not allege any racketeering activity. RICO defines "racketeering activity" as any of a number of activities relating to threats, extortion, embezzlement, misuse of pension funds and union funds, gambling, immigration law violations, obstruction of justice, obstruction of law enforcement, witness tampering, retaliation against a witness, forgery or misuse of a passport, human trafficking, money laundering, involvement with various weapons, drug trafficking, alien smuggling, and terrorist activities.[9] 18 U.S.C. § 1961(1). The Plaintiffs' Complaint, read as a whole and

---

[9]The Statute defines "racketeering activity" as "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act [21 USCS § 802]), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 [18 USCS § 201] (relating to bribery), section 224 [18 USCS § 224] (relating to sports bribery), section 471, 472, and 473 [18 USCS §§ 471, 472 and 473] (relating to counterfeiting), section 659 [18 USCS § 659] (relating to theft from interstate shipment) if the act indictable under section 659 [18 USCS § 659] is felonious, section 664 [18 USCS § 664] (relating to embezzlement from pension and welfare funds), sections 891-894] (relating to extortionate credit transactions), section 1028 [18 USCS § 1028] (relating to fraud and related activity in connection with identification documents), section 1029 [18 USCS § 1029] (relating to fraud and related activity in connection with access devices); section 1084 [18 USCS § 1084] (relating to the transmission of gambling information), section 1341 [18 USCS § 1341] (relating to mail fraud), section 1343 [18 USCS § 1343] (relating to wire fraud), section 1344 [18 USCS § 1344] (relating to financial institution fraud), section 1351 [18 USCS § 1351] (relating to fraud in foreign labor contracting) section 1425 [18 USCS § 1425] (relating to procurement of citizenship or nationalization unlawfully), section 1426 [18 USCS § 1426] (relating to the reproduction of naturalization or citizenship papers), section 1427 [18 USCS § 1427] (relating to the sale or naturalization or citizenship papers), section 1461-1465 [18 USCS §§ 1461 through 1465] (relating to obscene matter), section 1503 [18 USCS § 1503] (relating to obstruction of justice), section 1510 [18 USCS § 1510] (relating to obstruction of criminal investigations), section 1511 [18 USCS § 1511] (relating to obstruction of State or local law enforcement), section 1512 [18 USCS § 1512] (relating to tampering with a witness, victim, or an informant), section 1513 [18 USCS § 1513] (relating to retaliating against a witness, victim, or an informant), section 1542 [18 USCS § 1542] (relating to false statement in application and use of passport), section 1543 [18 USCS § 1543] (relating to forgery or false use of passport), section 1544 [18

USCS § 1544] (relating to misuse of a passport), section 1546 [18 USCS § 1546] (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 [18 USCS §§ 1581-1592] (relating to peonage, slavery, and trafficking in persons), section 1951[18 USCS § 1951] (relating to interference with commerce, robbery, or extortion), section 1952 [18 USCS § 1952] (relating to racketeering), section 1953 [18 USCS § 1953] (relating to interstate transportation of wagering paraphernalia), section 1954 [18 USCS § 1954] (relating to unlawful welfare fund payments), section 1955 [18 USCS § 1955] (relating to the prohibition of illegal gambling businesses), section 1956 [18 USCS § 1956] (relating to the laundering of monetary instruments), section 1957 [18 USCS § 1957] (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 [18 USCS § 1958] (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 [18 USCS § 1960] (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 [18 USCS §§ 2251, 2251A, 2252, and 2260] (relating to sexual exploitation of children), sections 2312 and 2313 [18 USCS §§ 2312 and 2313] (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 [18 USCS §§ 2313 and 2315] (relating to interstate transportation of stolen property), section 2318 [18 USCS § 2318] (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 [18 USCS § 2319] (relating to criminal infringement of a copyright), section 2319A [18 USCS § 2319A] (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 [18 USCS § 2320] (relating to trafficking in goods or services bearing counterfeit marks), section 2321 [18 USCS § 2321] (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 [18 USCS §§ 2341-2346] (relating to trafficking in contraband cigarettes), sections 2421-2424 [18 USCS §§ 2421-2424] (relating to white slave traffic), sections 175-178 [18 USCS §§ 175-178] (relating to biological weapons), sections 229-229F [18 USCS §§ 229-229F] (relating to chemical weapons), section 831 [18 USCS § 831] (relating to nuclear materials), (C) an act which is indictable under title 29 United States Code, section 186 [18 USCS § 186] (dealing with restrictions on payments and loans to labor organizations) or section 501(c) [18 USCS § 501(c)] (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title [18 USC § 157]), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act [21 USC § 802]), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 [8 USCS § 1324] (relating to bringing in and harboring certain aliens), section 277 [8 USCS § 1327] (relating to aiding or assisting certain aliens to enter the United States), or section 278 [8 USCS § 1328] (relating to importation of alien for immoral purpose) if the act indictable under such section of such

making all assumptions and inferences in Plaintiffs' favor as *pro se* plaintiffs, alleges

that Defendants were engaged in a scheme to prevent Plaintiff Mary Lou Hilow from

obtaining and enjoying a position as a tenured teacher. The Newspaper Defendant's

role in this scheme was apparently to prevent any publicity about the scheme. This

alleged scheme does not implicate any racketeering activity under the statute, and thus

Plaintiffs have not made out a RICO claim. The motion is granted on this basis as

well.[10]

### iv. Section 1983 Claim

Defendant next argues that the Court must dismiss any Section 1983 claim

Plaintiffs' bring against the Newspaper Company. Defendants insist that the Complaint

does not contain any allegations that the Defendant acted under color of state law, and

the Complaint therefore fails to raise a claim against Defendant under that statute.

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must

establish that they were deprived of a right secured by the Constitution or laws of the

United States, and the alleged deprivation was committed under color of state law."

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). No action exists for

"'merely private conduct, no matter how discriminatory or wrongful'" Id. (quoting Blum v.

---

Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B) [18 USCS § 2332(g)(5)(B)][.]" (pertaining to violations of anti-terrorism laws).

[10]Plaintiffs filed a separate document on the Court's docket entitled "RICO Statement." See dkt. # 5. This statement contains conclusory allegations that offers no factual predicate for its claims, and simply restates some of the numerous ways that the statute defines "racketeering activity." Such allegations are insufficient to state a claim against the Defendant Newspaper.

Yaretsky, 334 U.S. 1, 13 (1948)).  To establish state action, Plaintiffs must show that the person who caused their constitutional deprivation "'may fairly be said to be a state actor.'" Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 264 (2d Cir. 2014) (quoting Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003)).  State action requires a showing that "the 'allegedly unconstitutional conduct is fairly attributable to the State.'" Id. (quoting Sullivan, 526 U.S. at 50).  When a plaintiff contends that a private actor violated her rights, the plaintiff proves state action "by demonstrating that 'there is such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Id. (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. , 288 295 (2001)).  To determine whether the behavior can be attributed to the state, the Court must "[identify] 'the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity.'" Id. (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)).  In making this determination, Courts employ a number of factors, including "[t]hree main tests[.]"  Fabrikant, 691 F.3d at 207.  Those tests are:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the sate, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')

Id. (quoting Syblaski v. Indep. Grp. Home Living Program, 546 F.3d 255, 257 (2d Cir. 2008)).

The Court agrees with the Defendant that Plaintiffs' Complaint fails to allege state action on the part of the Newspaper.  Even if the Plaintiffs properly alleged that

some state action had violated their constitutional rights, Plaintiffs have not alleged any conduct by the Defendant Newspaper except failing to publish stories concerning the other Defendants' alleged misconduct.  Publishing a newspaper is not an action undertaken pursuant to any state coercive power and not done under the power of the state.  No joint action is alleged, just a refusal by the Defendant newspaper to publish stories the Plaintiffs wanted published.  Finally, no public function had been delegated to the Newspaper.  The Newspaper simply acted as a private entity, and therefore cannot be liable under Section 1983.

### v.   State Law Claims

Finally, the Newspaper Defendant argues that Plaintiffs have failed to state any claims under New York law.   Because the Court will dismiss all of the federal claims in this case, the Court could decline to exercise supplemental jurisdiction and address any of these claims.  See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if (3) the district court has dismissed all claims over which it has original jurisdiction.").  In the interest of completeness and for reference to the motions of other Defendants, the Court will address these issues.

The Plaintiffs have not stated any state-law claims upon which relief could be granted.  Defendant contends that Plaintiffs allege a civil conspiracy to defraud Plaintiffs.  To prove fraud in New York, a Plaintiff must show: "(1) that the defendant made a representation; (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury."  Brown v. Lockwood, 76 A.D.2d 721, 730-31,

25

432 N.Y.S.2d 186, 193 (2d Dept. 1980). The Court agrees that Plaintiffs have failed to plead a cause of action for such fraud; there are no allegations of any misrepresentations to the Plaintiffs by the Defendant about anything material to the case. Plaintiffs allege that the Newspaper refused their demands to publish material about Mary Lou Hilow's case. Choosing not to print an article in a newspaper is not a misrepresentation. Plaintiffs also appear to allege that the Newspaper mislead the general public about their willingness to report the news truthfully and fairly. Even if the Court were permitted to tell a newspaper what to publish, these allegations would not amount to claims of fraud. In addition, because there are no actionable common-law tort claims in the case, no claim for civil conspiracy can exist. Internet Law Library, Inc. v. Southridge Capital Management, LLC, 223 F.Supp.2d 474 (S.D.N.Y. 2002) ("New York law does not recognize an independent cause of action for civil conspiracy.").

As such, Plaintiffs have not stated a claim upon which relief can be granted against the Defendant Newspaper Company. The Defendant's motion to dismiss will be granted.

### 2. Motion of Robert Julian

Defendant Robert Julian also filed a motion to dismiss the Complaint against him. Like the Defendant Newspaper Company, Defendant Julian argues that the claims against him are time barred, and that, in any case, Plaintiffs have not stated a claim upon which relief could be granted.

The allegations against Defendant Julian concern his employment as attorney for Plaintiff in her dispute against the school district. As part of their allegations that Plaintiff Mary Lou Hilow was mistreated by various Defendants when they represented

26

in her various proceedings, Plaintiffs allege that Hilow "fell into corrupt hands of another predator attorney[,] Robert Julian[,] from August 1994 to August 5, 1997[.]" Complt. at ¶ 152. Plaintiff contends that, while operating under "the color of state law," Defendant Julian "engaged in reckless legal malpractice, deception, extreme cruelty and betrayal" of "Plaintiff's plea for competent legal representation" and "deceptively filed" an appeal "pro se." Id. Plaintiff paid Defendant Julian $4,000, but Defendant "covered up unprecedented lawlessness" by Plaintiff's previous attorney and the Judge in Plaintiff's previous federal case and "continued to sabotage Plaintiff's lawsuit and appeal and to obstruct justice, totally violating Plaintiff's civil rights." Id. Plaintiffs cite to exhibits to their Complaint in making these allegations against Defendant Julian. See Exhs. F-J to Plaintiffs' Compliant, dkt ##s 1-6-1-10. All of the documents which reference Defendant Julian concern events from the 1990s.

The Court will grant Defendant Julian's motion on the basis of the statute of limitations. All of the allegations in Plaintiffs' Complaint concerning Defendant Julian occurred during the period when Julian served as Plaintiff's Counsel, and the Complaint clearly alleges that such employment existed from 1994 through 1997. As explained above, all of Plaintiffs' federal claims against Defendant Julian, whether based on the RICO statute or Section 1983, accrued during this period. The statute of limitations has long since run on those claims. Moreover, the Court agrees with Defendant Julian's arguments that the statute of limitations has expired on any conceivable state-law claims against him.[11] The motion to dismiss will therefore be granted on that basis.

_____

[11]The Court finds that the Complaint might conceivably allege a state-law legal malpractice claim against Defendant Julian. In New York, the statute of limitations on

### 3.    Motion of Karen DeCrow

Defendant Karen DeCrow also moves for dismissal of the Complaint.  Defendant DeCrow seeks dismissal on various grounds.  The Court will address only the statute of limitations, as that issue is dispositive on this matter.

Plaintiffs' Complaint alleges that they paid Defendant Karen DeCrow $50,000 to serve as their attorney in a lawsuit filed in 1991.  Complt. at ¶ 24.  This lawsuit was filed in the United States District Court on May 23, 1991, and alleged discrimination in Plaintiff's employment with the Defendant School District.  Id. at ¶ 26.  The Complaint was dismissed with a 55-page summary judgment ruling.  Id.  Plaintiffs contend that this ruling was the result of Defendant DeCrow's "deliberate bungling, attempted extortion, unprecedented legal malpractice [and] carefully-planned sabotage."  Id.  The court's decision was "a . . . laundry list of Karen DeCrow's deliberate mistakes and bungling."  Id. at ¶ 30.  The Complaint also alleges that Plaintiffs discharged Defendant DeCrow as their lawyer on July 23, 1994.  Id. at ¶ 150.  Plaintiffs contend that "[f]or almost a year

---

malpractice claims is three years.  See NY CPLR § 214(6).  "In most cases," a malpractice claim accrues when "an actionable injury occurs, 'even if the aggrieved party is then ignorant of the wrong or injury.'"  McCoy v. Feinman, 99 N.Y.2d 295, 301 , 719 .  Thus, "[w]hat is important is when the malpractice was committed, not when the client discovered it.'"  Id.  Here, Plaintiffs admit that Defendant stopped representing them in 1997, and malpractice could not have occurred after that date.  Any conceivable breach-of-contract claim with Julian is similarly barred.  See NY CPLR § 213(2) (six-year statute of limitations for contract claims).  To the extent that fraud existed, the exhibits to the Complaint allege that Plaintiffs had knowledge of Defendant's alleged misconduct by November, 2000.  See Exh. E to Complaint, dkt. # 1- 5.  A fraud claim in New York must be brought within six years, and the time is measured as "the greater of six years form the date the cause of action accrued or two years form the time the plaintiff . . . discovered the fraud or could with reasonable diligence have discovered it."  NY CPLR § 213(8).

after Plaintiff discharged her DeCrow (with extreme cruelty) tried to extort more money (over $3,000) from Plaintiffs in monthly statements of account threatening to sue them if they didn't pay." Id. at ¶ 147. DeCrow also allegedly refused to return an unused retainer and demanded additional payments for nearly a year. Id. at ¶ 150. Plaintiffs requested that Defendant return their files and unused retainer during telephone calls and in letters dated July 24, 1994, August 28, 1997 and September 4, 1997. Id. at ¶ 151. Plaintiffs renewed their requests in telephone calls of January 24, 2014 and January 26, 2014, and in a letter dated January 27, 2014. Plaintiffs filed complaints against DeCrow, but received no satisfaction. Id. at ¶¶ 31, 35-36.

Though Plaintiffs appear to cast Defendant DeCrow as part of the larger conspiracy, Plaintiffs allege no conduct on DeCrow's part other than her involvement in Plaintiffs' federal lawsuit, which terminated in 1994. The factual allegations in the Complaint make clear that Plaintiffs' claims against DeCrow sound in legal malpractice and breach of contract. A legal malpractice claim in New York requires a plaintiff to demonstrate the existence of an attorney-client relationship, and to "'[demonstrate] that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly expressed by a member of the legal profession and that the attorney's breach of this duty proximately caused [the] plaintiff to sustain actual and ascertainable damages.'" Arnold v. Devane, 123 A.D.3d 1202, 1203-1204 (3d Dept. 2014) (quoting Rudolph v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 442, 867 N.E.2d 385, 835 N.Y.S. 2d 534 (2007)). Plaintiffs allege that Defendant fell below the standard of care in representing her, and that she lost her case as a result. They also contend that she failed to return a retainer that was part of their agreement for legal services, and that

Defendant refused to return files when requested.  These actions, Plaintiffs assert, caused them financial damage.  Thus, Plaintiffs raise a breach-of-contract claim against DeCrow.  See Webb v. Greater N.Y. Auto Dealers Assn., Inc., 123 A.D.3d 1111, 1112 (2d Dept. 2014) (elements of a breach of contract action are: "the existence of a contract, the plaintiff's performance pursuant to that contract, the defendant's breach of its contractual obligations, and damages resulting from that breach.").

Here, Plaintiffs allege that they were aware of Defendant DeCrow's conduct and the harm that conduct caused in 1994.  As explained above, even if Plaintiffs could allege a RICO claim, the statute of limitations would also have run on that claim.  Likewise, Plaintiffs' state-law claims are barred.  In New York, the statute of limitations on malpractice claims is three years.  See NY CPLR § 214(6).  The statute of limitations on contract claims is six years.  See NY CPLR § 213(2).  Thus, the statute of limitations has long since run on any claims against Defendant DeCrow.  Plaintiff's correspondence and telephone calls with DeCrow in 2014 do not renew the statute of limitations, since in New York "[a]n action accrues . . . when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 43, 660 N.E.2d 1125, 637 N.Y.S.2d 342, 346 (1995).  The facts alleged in the Complaint make clear that Plaintiffs' knew of their cause of action against Defendant DeCrow in the 1990s and sat on their rights.  Defendant's motion will be granted on this basis.[12]

---

[12]As the Court has determined that the Complaint should be dismissed, Defendant's argument that the Complaint fails to meet the "short and plain" pleading standard in Federal Rule of Civil Procedure 8(a) is moot.

**4.      Motion of Rome Teachers' Association and New York State United Teachers and James Sander, Esq.**

Defendants Rome Teachers' Association ("RTA"), New York State United Teachers ("NYSUT") and James R. Sander, Esq., former NYSUT general counsel, seek dismissal on a variety of grounds.  As a basic matter, Defendants contend that Plaintiffs' claims accrued in 1989, when she lost her position as a teacher in the School District, and thus all of her claims are barred by the applicable statutes of limitations. The Defendants also contend that Plaintiffs do not state a claim upon which relief can be granted, that their claims are barred by res judicata and collateral estoppel, and that the Court lacks subject-matter jurisdiction.

Plaintiffs allege that RTA and NYSUT violated Plaintiff Mary Lou Hilow's agreement with the unions by failing to provide proper representation for her December 14, 1989 arbitration hearing and forcing her to hire her own attorney.  Complt. at ¶ 24. Plaintiffs also allege that the unions refused to file a petition regarding her termination with the Commissioner of Education in 1989, forcing Plaintiff to file that petition without an attorney's assistance.  Id. at ¶ 25.  The union likewise refused to participate in the federal lawsuit she filed in 1991.  Id. at ¶ 26.  Plaintiffs also allege that "[i]n letters dates September 26, 1989, December 7, 1992 and October 12, 2006" the Defendant unions "denied [Mary Lou Hilow] fair representation, mandates of a union contract and common law fiduciary responsibilities as mandated" by law and the union contract.  Id. at ¶ 143.  Plaintiffs complain particularly that the NYSUT President and Defendant James Sander informed Mary Lou Hillow that her "terminations (legal or illegal) are moot points due to the time that has elapsed since 1983, 1988 and 1989."  Id.  Plaintiffs

contend that this statement demonstrates that the union Defendants participated in the long-standing "RICO pattern of union syndicate misrepresentation, thuggery, overt discrimination and outrageous lawlessness which desecrates and eradicates workers' rights gained in the last 50 years." Id. Plaintiffs also allege that they filed an unfair labor practice charge against the RTA and NYSUT in April 2008. Id. at ¶ 38. Plaintiffs admit that the Complaint was dismissed. Id. at ¶ 40.

Despite the fact that Plaintiffs vaguely and generally allege an on-going conspiracy, Plaintiffs have not pointed to any discrete acts by the Defendant Unions since 2006. They simply allege that the conspiracy continues without pointing to any acts continuing the conspiracy. As explained above, the statute of limitations has therefore run on any RICO claim Plaintiffs could conceivably bring. To the extent that Plaintiffs' claim is one for breach-of-contract against her unions, the statute of limitations has also run on that claim, since their Complaint admits that the alleged breach of the Contract occurred mostly in the 1980s and 1990s, with most recent accusation of a violation of the contract occurring in 2006. The six-year statute of limitations has run on that claim as well. As also explained above, any Section 1983 claims have a three-year statute of limitations, and that time has passed. Any employment discrimination claim under federal law is likewise stale. See Rice v. Scudder Kemper Invs., Inc., 55 F3d R. Serv. 3d 242, at *4-5 (S.D.N.Y. 2003) (complainant has 300 days from act of discrimination to file EEOC charge and then ninety days after obtaining a right-to-sue letter).

Plaintiff is also barred from bringing any state-law discrimination claims. See NY Exec § 297 (establishing time requirements for discrimination claims). Moreover, to the

32

extent that Plaintiffs' claims could be read to allege improper labor practices against the Defendant unions, this Court lacks jurisdiction to hear the action. See If ill v. N.Y. State Court Officers Ass'n, 655 F.Supp.2d 382, 392 (S.D.N.Y. 2009) (dismissing unfair labor practice claims because the New York State Public Employment Relations Board has exclusive jurisdiction over claims of improper employee organization practices brought under N.Y. Civ. Serv. Law § 209-a(2)). Thus, the Defendants' motion must be granted.

### 5. Conclusion on Motions to Dismiss

For the reasons stated above, the motions to dismiss of Defendants Rome Sentinel Newspaper Company, Robert Julian, New York State United Teachers, Rome Teachers Association and James R. Sandner, and Karen DeCrow will be granted.

## III. ANALYSIS ON MOTION FOR SUMMARY JUDGMENT

Defendants Ferrara, Fiorenza, Larrison, Barrett & Reitz, PC ("The Law Firm") and Rome City School District ("the District") have filed motions for summary judgment. Despite having been provided ample time to respond to the Defendants' motions, Plaintiffs have not done so. Indeed, this Court considered Plaintiffs' motions for an extension of time to respond to Defendants' motions for summary judgment. See dkt. # 56. The Court granted the motion in part, permitting Plaintiffs additional time to respond to the motions. See dkt. # 57. Plaintiffs have not done so. Instead, they have filed a number of letters with the Court which largely repeat their allegations of a vast conspiracy on the part of court officers and public officials across the State of New York to deny Mary Lou Hilow a teaching position and status she deserved. See dkt. ##s 65, 67, 68, 69, 70. They have not, however, filed any of the documents required by the

local rules in responding to a motion for summary judgment.  <u>See</u> L.R. 7.1(a)(3).

## A.    LEGAL STANDARD

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, <u>see</u> <u>Tenenbaum v. Williams</u>, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant is able to establish a <i>prima facie</i> basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998).

In this case, Plaintiffs have not opposed the motions for summary judgment and

have not filed any statement opposing the material facts as established by the Defendants. In the Second Circuit, "[t]he non-moving party need not respond to the motion." <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 194 (2d Cir. 2014). In failing to respond, however, a party "runs the risk of unresponded-to-statements of undisputed facts proffered by the movant being deemed admitted." <u>Id.</u> Still, "[a] non-response does not risk default judgment[.]" <u>Id.</u> "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." <u>Id.</u> Here, "the court may rely on other evidence in the record even if uncited." <u>Id.</u> In addition, "the court must determine whether the legal theory of the motion is sound." <u>Id.</u> Thus "courts, 'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" <u>VT. Teddy Bear Co. v. 1-800 BEARGRAM Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004) (quoting <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 416 (4th Cir. 1993)).

**B.    Facts Applicable to the Motions[13]**

        **i.    Motion of Defendant Ferrara, Fiorenza Larrison, Barrett & Reitz, PC**

Defendant Ferrara, Fiorenza, Larrison, Barrett & Reitz, PC, is a law firm located

---

[13]Both moving Defendants submitted statements of undisputed material facts as required by Local Rule 7.1(a)(3). Plaintiffs did not respond to these statements. The Local Rules provide that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." L.R. 7.1(a)(3) (emphasis in original). As a result, having examined the citations to the record supplied by the Defendants, the Court finds that the facts recited in this section are deemed admitted.

in East Syracuse, New York.  (Defendant Ferrara, Fiorenza, Larrison, Barrett & Reitz, PC's Statement of Undisputed Material Facts ("Defendant Ferrara's Statement"), dkt. # 34-13, at ¶ 2).  Defendant Rome City School District has been a client of the Law Firm on several occasions since 1994.  (Id.).  Scolaro, Shulman, Cohen, Lawler & Burstein, PC ("Scolaro Shulman") is another Syracuse law firm that represented the school district on several matters between 1991 and 1994.  (Id. at ¶ 3).  Included in those matters was defending the District in the federal case brought by Plaintiffs, Hilow v. Rome City School District, No. 91cv567 (N.D.N.Y.).  (Id.).

Defendant's statement of facts relates the history of Plaintiff Mary Lou Hilow's employment with the District.  (See Id. at ¶¶ 12-25).  Of importance to this motion, Mary Lou Hilow received notice that she would be laid off on March 8, 1988, along with seven other teachers.  (Id. at ¶ 22).  Retirements, resignation and other forms of attrition made the lay-offs unnecessary, however, and the notice was rescinded.  (Id.).  On June 30, 1989, plaintiff and around 25 other teachers were laid off due to declining enrollment. (Id. at ¶ 23).  Following the requirements of New York Education Law § 2510, the District laid off teachers with the least seniority in the affected tenure areas.  (Id. at ¶ 24).  Mary Lou Hilow, who had several breaks in her service, had the least amount of service among business education department teachers, with 8.275 years.  (Id.). Plaintiff Mary Lou Hilow was not reinstated and her position was not re-filled.  (Id. at ¶ 25).

The Rome Teachers' Association filed a grievance on Mary Lou Hilow's behalf following this 1989 lay-off.  (Id. at ¶ 26).  The grievance was submitted to binding arbitration on the question of whether the lay-off violation Education Law § 2510 as

36

incorporated in the collective bargaining agreement.  (Id.).  Plaintiff alleged that the

District miscalculated her service by excluding five years between 1964 and 1969.  (Id.

at ¶ 27).  The District responded that Plaintiff lost this service credit upon resigning in

1970.  (Id.).  After an arbitration held on December 14, 1989, the arbitrator issued an

opinion and award that determined that the District correctly calculated Plaintiff's

seniority, and that the lay-off was proper.  (Id. at ¶¶ 28, 30).  Plaintiff appealed to the

New York State Commissioner of Education, who found that Hilow's seniority had been

calculated correctly and affirmed the decision.  (Id. at ¶¶ 31, 33).  Plaintiff filed a claim

alleging violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination

in Employment Act with the Equal Employment Opportunity Commission ("EEOC") on

January 23, 1990.  (Id. at ¶ 34).  The EEOC found no discrimination and issued Plaintiff

a right-to-sue letter on February 25, 1991.  (Id. at ¶¶ 36-38).  The law firm did not

represent the District in any of these proceedings.  (Id. at ¶¶ 29, 32, 35).

The law firm of Scolaro Shulman, through Ted H. Williams, Esq., represented the

District in the federal employment discrimination lawsuit filed by Mary Lou Hilow on May

23, 1991.  (Id. at ¶¶ 39, 41-42).  The Hon. Neal P. McCurn issued a decision granting

Defendants' motion for summary judgment on all state and federal claims in that case

on June 29, 1994.  (Id. at ¶ 44-47).  On June 30, 1994, members of Scolaro Shulman,

but not Mr. Williams, left that firm to found the Defendant Law Firm.  (Id. at ¶ 48).

Plaintiff filed a notice of appeal of Judge McCurn's decision.  (Id. at ¶ 49).  The Law

Firm did not appear or make any filings related to that appeal.  (Id. at ¶ 50).  The

Second Circuit eventually dismissed the appeal because Plaintiff failed to comply with a

scheduling order.  (Id. at ¶ 51).  The Circuit Court declined requests by Plaintiff in

September 1999 and August 2001 to reopen the appeal.  (Id. at ¶ 52).

Following these proceedings, Plaintiffs filed a series of letters, complaints and grievances with various state and federal bodies.  (Id. at ¶¶ 53-71).  Those filings have been described in detail above.  Some of those filings included allegations against members of the Defendant Law Firm.  Plaintiff wrote Judge McCurn in 1999, requesting a criminal investigation of the attorneys involved in her lawsuit and accusing the attorneys involved in her case of "'fraud, criminal negligence, deceiving the court, obstruction of justice, using intimidation to terrorize me and my husband, . . . aiding and abetting and enabling'" the School District and the RTA in discriminating against her.  (Id. at ¶ 57).  When Plaintiff received no response, she wrote to the Second Circuit, accusing the Court and the attorneys involved in her case of "deliberately misrepresent[ing]" her case.  (Id. at ¶¶ 58-59).  The Second Circuit dismissed this complaint about the Judge.  (Id. at ¶ 60).  In November, 2000, July 2001, June 2003, and December 2003, Plaintiff alleged that the District's attorneys, including members of the Defendant Firm, had engaged in activity that "aided and abetted" her wrongful termination, committed fraud on the court, and engaged in a deceitful series of actions, including using perjured testimony and false evidence.  (Id. at ¶¶ 61-64).  On February 5, 2004, Plaintiff wrote Chief Judge Frederick J. Scullin of the Northern District of New York to complain that many officials, administrators and lawyers, including members of the Defendant law firm, "'have knowingly and willfully engaged in patterns of crime, corruption, concealment, obstruction of justice and cover up which, on the face constitute RICO violations.'" (Id. at ¶ 65).  She also alleged that such conduct amounted to a violation of her due process rights.  (Id.).

38

The Defendant Law Firm represented the District when Plaintiff filed a complaint with the New York State Division of Human Rights on April 23, 2007.  (Id. at ¶ 66).  The Division dismissed this complaint as time-barred on June 18, 2007.  (Id. at ¶ 67).  Plaintiff filed three separate complaints with the Public Employment Relations Board, naming the District, the RTA, and NYSUT on April 26, 2008.  (Id. at ¶ 68).  The Board's Director of Public Employment Practices and Representation *sua sponte* dismissed these complaints as time-barred, and that dismissal was affirmed by the full board.  (Id. at ¶¶ 69-70).  Plaintiff served a number of "Notice[s] of Claim" on the District in late 2010 and early 2011.  (Id. at ¶¶ 71, 73).  Serving as the District's Counsel, the Law Firm returned these notices as unverified and possessing other facial and procedural deficiencies.  (Id. at ¶¶ 72, 74).  The last action that the Law Firm took occurred on January 26, 2011.  (Id. at § 74).

### ii.    Additional Facts Alleged by Defendant Rome City School District

As required by the Local Rules, Defendant Rome City School District filed a statement of undisputed material facts.  (See Statement of Material Facts About Which Rome City School District Contends There is No Dispute ("District's Statement"), dkt. # 55-2).  This statement squares with the law firm's statement.  The Court will therefore cite to this statement only as necessary for additional material facts necessary to decide the motion.  As a general matter, the Court notes simply that:

> Plaintiff has not worked for [the District] since 1989 and [the District] has done nothing actively in the last 25 years to plaintiff except fail to re-employ her and defend her various administrative and legal claims.  There are no specific factual allegations in the complaint of alleged acts or failures to act against [the District] that have occurred since 1989.

(District's Statement at ¶ 32).

**C.   Analysis of Motions**

**i.  Defendant Ferrara, Fiorenza Larrison, Barrett & Reitz, PC**

The Defendant law firm seeks summary judgment on Plaintiffs' claim on a variety of grounds, including *res judicata* and collateral estoppel, the insufficiency of the pleading, and the statute of limitations.  Based on the facts established by the Defendant and undisputed by the Plaintiff, the Court will find that summary judgment is appropriate for this Defendant.   Since the issue of the statute of limitations is dispositive and already explained by the Court, the Court will concentrate on that issue. The Court agrees with the Defendant, however, that the other grounds cited in the Defendant's brief would provide a basis for granting summary judgment.

Defendant argues that a liberal reading of the Complaint suggests that Plaintiffs attempt to bring claims pursuant to RICO, 42 U.S.C. §§ 1983, 1985, 1986, discrimination and retaliation under Title VII, Title IX and the ADEA, and state law claims of fraud, intentional infliction of emotional distress and legal malpractice.[14] Defendant also suggests that the Complaint may seek to set aside a previous judgment under Rule 60(d), as well as to allege violations of New York's Freedom of Information

_____

[14]The facts as established by the Defendant indicates that Plaintiffs were never a client of the Defendant Law Firm.  Judgment on any claim of legal malpractice against the law firm is therefore appropriate.  As stated above, a legal malpractice claim in New York requires a plaintiff to demonstrate the existence of an attorney-client relationship, and to "'[demonstrate] that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly expressed by a member of the legal profession and that the attorney's breach of this duty proximately caused [the] plaintiff to sustain actual and ascertainable damages.'" Arnold, 123 A.D.3d at 1203-1204.  Here, there was no attorney-client relationship, and therefore no malpractice claim against the moving Defendant.

Law.[15]

The facts as established by Defendant and admitted by the Plaintiffs demonstrate that all of Plaintiffs' claims which could conceivably apply to the Defendant Law Firm are time-barred. Plaintiffs can establish no facts to demonstrate that the moving Defendant engaged in any conduct that falls within the four-year statute of limitations for a RICO. Indeed, the facts as established by Defendant's statement indicate that Plaintiff had knowledge of RICO violations at the latest by 2004, and thus the claim had accrued at least by then. Though the Plaintiffs apparently argue that Defendant's legal advocacy on behalf of the District was part of the RICO conspiracy, the facts established by the Defendant indicate no activity on the Defendant's part that could be considered under the "continuing violation" theory. Simply returning random legal notices sent by the Plaintiffs cannot be considered any sort of racketeering or other conspiratorial activity.

Similarly, the actions which give rise to Plaintiffs' claims of discrimination under various federal statutes, like Title VII, Title IX, 42 U.S.C. § 1983, and the ADEA, all occurred two decades ago, and are barred by the statutes of limitations discussed above.[16] Similarly, Defendant here points to 42 U.S.C. § 1985, which deals with

---

[15]This Court has not issued any judgment or order in any matter related to these parties, and no motion is before the Court for relief from judgment under Rule 60. See Fed. R. Civ. P. 60. The Court disagrees with the Defendant that any Rule 60 motion is before the Court and will not address the viability of such a motion. The Court likewise finds that Plaintiffs do not attempt to bring a Freedom of Information Law complaint, as they have not alleged that anyone that they sued had the capacity to produce the information they sought.

[16]A Title IX claim has a statute-of-limitations of three years in New York. See Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (establishing that Title IX claims

conspiracies to violate constitutional rights, and 42 U.S.C. § 1986, which addresses parties who fail to prevent conspiracies to violate civil rights.  The statute of limitations for a Section 1985 claim in New York is three years.  <u>Cornwell v. Robinson</u>, 23 F.3d 694, 703 (2d Cir. 1994).  Section 1986 has a one-year statute of limitations.  <u>See</u> 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action accrued.").  The facts established by the Defendants in support of their motion indicate that the claims accrued at the time of Mary Lou Hilow's first federal suit, which occurred in the early 1990s.  The statutes of limitations have long since run.  Thus, even if the Plaintiff could somehow establish that a private law firm engaged in state action, the claims would still be time-barred.

Defendant identifies three potential state-law claims which Plaintiffs may bring in their complaint:  fraud, intentional infliction of emotional distress, and a violation of the New York Judiciary Law § 487.  The Court has already explained that fraud allegations in New York carry with them a six-year statute of limitations, or two years from when a plaintiff discovers the fraudulent conduct.  Since the facts established by the Defendant show that Plaintiffs were aware of the alleged fraud in the 1990s, such claims are clearly time-barred.  An action for intentional infliction of emotional distress is subject to a one-year statute of limitations in New York.  <u>See</u> NY CPLR § 215(3); <u>Jemison v.</u>

_____

are governed by the state-court personal injury statute of limitations, and that in New York, that limitation is three years).  An ADEA claim must be filed within 90 days of receipt of a right-to-sue letter from the EEOC.  <u>See</u> <u>Francis v. Elmsford Sch. Dist.</u>, 442 F.3d 123, 127-28 (2d Cir. 2006).  The facts established here indicate that Plaintiff Mary Lou Hilow received a right-to-sue letter in 1991.  The statute of limitations has run on such claims.

Crichlow, 139 A.D.2d 332, 335, 531 N.Y.S.2d 919, 922 (2d Dept. 1988) (a "cause of action for intentional infliction of emotional distress is also governed by a one-year Statute of Limitations").  Plaintiff's claims in this respect, predicated on the loss of her teaching position and the actions of moving Defendant in securing judgment for Defendants on Mary Lou Hilow's case in federal court, are clearly barred.  Finally, an action under the New York Judiciary Law, Section 487, which provides civil penalties against an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" has a six-year statute of limitations.  See Melcher v. Greenberg Traurig, LLP, 23 N.Y.3d 10, 15, 11 N.E.3d 174, 177, 988 N.Y.S.2d 101, 104 (2014) ("claims for attorney deceit are subject to the six-year statute of limitations in CPLR 213(1)").

As such, the facts established by the Defendant demonstrate that all of Plaintiffs' conceivable claims are barred by the statute of limitations.  The Court will therefore grant the motion for summary judgment.

### ii.    Motion of Defendant Rome Central School District

Defendant Rome Central School District likewise argues for summary judgment on various grounds.  The School District argues that the Plaintiffs' Complaint fails to raise any cognizable claims under RICO or any other state or federal statute.  The School District also contends that any claims are barred by res judicata, collateral estoppel, laches, and the statute of limitations.   Again, Plaintiffs have failed to respond.

The Court will grant the motion based on Plaintiffs' failure to meet the relevant statutes of limitations, though the Court also notes that the Defendant School District's

arguments are also persuasive on the other bases offered.  The uncontested facts established by the Defendant are Plaintiff Mary Lou Hilow had not worked for the Defendant District since 1989, and that the District did not act or fail to act in any way that harmed Plaintiff after that date.  (<u>See</u> District's Statement at ¶ 32).  Accepting these facts as true, Plaintiffs' claim against the District accrued in 1989.  Since none of the statutes of limitations discussed above extend for twenty-five years, all of Plaintiff's claims are time-barred.  The Court will grant the motion for summary judgment.

### D.      Conclusion on Motions for Summary Judgment

For the reasons stated above, the Court will grant the motions for summary judgment of Defendants Ferrara, Fiorenza, Larrison, Barrett & Reitz, PC, and Rome City School District.

## IV.      CONCLUSION

In the end, the Court finds that this case is really about Plaintiff Mary Lou Hilow's long-standing disappointment, anger and disgust with the loss of her teaching position in 1989.  The events that gave rise to this case occurred at least twenty-five years ago, and have been repeatedly examined by the Courts and numerous administrative bodies over the past two decades.  Unfortunately for the Plaintiffs, these cases have been decided in favor of the various Defendants.  Attempts to revisit the case in a vast array of fora have failed, and will continue to fail.  There is no relief that this Court could grant, and the Plaintiffs' Complaint must be dismissed and judgment granted for all of the Defendants.  This matter is over, and the Plaintiffs should recognize that continued attempts to revisit those issues would be frivolous.  For the foregoing reasons, the

Court holds that:

1. The Motion to Dismiss of Defendant Rome Sentinel Newspaper Company, dkt. # 10, is hereby **GRANTED**;

2. The Motion to Dismiss of Defendant Robert Julian, dkt. # 13, is hereby **GRANTED**;

3. The Motion to Dismiss of Defendants New York State United Teachers, Rome Teachers Association, and James R. Sander, dkt. # 14, is hereby **GRANTED**;

4. The Motion to Dismiss of Defendant Karen DeCrow, dkt. # 17, is hereby **GRANTED**;

5. The Motion for Summary Judgment of Defendant Ferrara, Fiorenza, Larrison, Barrett & Reitz, PC, is hereby **GRANTED**; and

6. The Motion for Summary Judgment of Defendant Rome City School District is hereby **GRANTED**.

IT IS SO ORDERED

Dated:March 2, 2015

Thomas J. McAvoy
Senior, U.S. District Judge